SMITH *v.* SMITH.

No. 6208. SEPTEMBER 19, 1928.

103

*L. G. Fortson, P. S. Etheridge,* and *Branch & Howard,* for plaintiff.

*Austin & Boykin,* for defendant.

RUSSELL, C. J. Upon a review of the petition as set forth in the settlement of facts we are of the opinion that the original petition for divorce filed by the husband on the ground of cruel treat-

ment was sufficient to support the amendment. Certainly under the rule in *Ellison* v. *Ga. R. Co.,* 87 *Ga.* 691 (13 S. E. 809), and a long line of similar rulings subsequent thereto, there was enough to amend by. The petition stated a plaintiff and a defendant and prayed that a divorce be granted, and substantially alleged that the application was based upon the statutory ground of cruel treatment. It needed completion, but, as stated by Chief Justice Bleckley in the *Ellison* case, if the petition had not been imperfect it would not have needed amendment. The amendment set forth some facts which, in our opinion, would authorize the grant of a divorce on the ground of cruel treatment, though other allegations may be subject to demurrer. The allegations of the amendment to the effect that upon one occasion the husband was falsely charged with adultery with a young woman, as set forth in the petition, constitutes cruel treatment if the facts alleged are proved on the trial. This court has held that for a husband to charge his wife with adultery is cruel treatment on his part; and the reverse of the rule is equally true. In another portion of the amendment the husband charges that on one occasion his wife struck him without justification or at least not in self-defense. This assault and battery by the wife upon the husband (applying the same rule in behalf of the husband as we have uniformly adhered to with reference to a wife) likewise constitutes cruel treatment. Nothing we hold in this case is in conflict with the decision of this court in *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878), because it is alleged in the petition that the systematic cruel treatment to which the plaintiff was subjected not only endangered his health but "wrecked" it. For purposes of demurrer this must be assumed to be true, and from what has been said it is clear that the court erred in rejecting the proffered amendment in its entirety, and erred thereafter in dismissing the petition. As said in *Wilkinson* v. *Wilkinson,* 159 *Ga.* 332, 339 (supra), "Under § 2946 of the Civil Code of 1910, the jury in their discretion may grant either a total or partial divorce on the ground of cruel treatment. The kind of cruel treatment which is a ground for and will authorize a total divorce in this State ' is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health. ' *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A.

878) ; *Brown* v. *Brown,* 129 *Ga.* 246 (58 S. E. 825) ; *Cureton* v. *Cureton,* 132 *Ga.* 745 (65 S. E. 65) ; *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030) ; *Miller* v. *Miller,* 139 *Ga.* 282 (77 S. E. 21) ; *Ford* v. *Ford,* 146 *Ga.* 164 (91 S. E. 42) ; *Pierce* v. *Pierce,* 145 *Ga.* 886 (89 S. E. 1045)"

The first question raised by the demurrer to the wife's application for alimony, as stated by counsel for the plaintiff, is whether an increase in the earnings and property of the husband after the separation are material or relevant in the suit for alimony, it being insisted that there is "no right of alimony in the wife to take earnings subsequent to the date of the separation, except such as may be required to furnish the actual necessities of the wife," and the schedule of property set forth in the petition for divorce showing that the husband's property at the date of the separation was more than ample for furnishing actual necessaries. Stated briefly, the point raised is whether, in considering an application by the wife for alimony, the court shall take into consideration the property and earnings of the husband at the time of the trial, or is he restricted to the financial condition of the husband at the time of the separation. Counsel for the husband insist that the wife has no right of alimony in the property or earnings of the husband acquired after separation, and cite the ruling of this court in the present case (162 *Ga.* 349, 133 S. E. 842), in support of their contention. When the case was here before, the husband excepted to the judgment of the trial judge ordering the husband to pay to the wife the sum of $300 per month, and that the wife have the use of the home of the husband free of rent, until the further order of the court, with an allowance of $500 as counsel fees for the wife's attorneys, upon the ground that the judgment was contrary to law. The court held that "In these circumstances we can not hold that the judgment of the court awarding alimony and attorney's fees is contrary to law, and that the trial judge abused his discretion in the grant of temporary alimony and counsel fees; the court in effect having awarded the wife temporary alimony in the amount which the husband had been voluntarily paying her prior to the filing of his libel for divorce, and the amount awarded her as attorney's fees not being so excessive as to amount to an abuse of the discretion vested in the trial judge under the law." This court further ruled: "The judgment of the court below is

affirmed, with direction that the order of the court requiring the plaintiff to file a schedule of the property owned by him at the date of the filing of his application for divorce be set aside, and that the schedule filed in compliance with said order be stricken from the files." From this ruling we do not understand that this court passed upon the question now before us. The court held that the only schedule required to be filed by the petitioner for divorce was that setting forth the property owned or possessed by the parties at the time of the separation, and accordingly struck the schedule which had been filed in compliance with the order of the trial court, which set forth the property owned by the libelant at the date of filing his petition for divorce. If the judge in passing upon alimony, or a jury upon the final trial of the case, is restricted to the schedule filed by the petitioner for divorce in ascertaining the amount of the property owned by the parties, and is not permitted to dispute the statement in that respect, the ruling when the case was here before would undoubtedly be controlling as the law of the case. The court did not mean to hold, and did not declare, anything more than the proper construction of section 2954 of the Civil Code upon the point then before it, which related merely to the schedule required to be filed by a petitioner for a divorce. Certainly a wife is not compelled in every instance to accept the statement of the husband as to his financial condition, and especially if it be untrue. The court, which would want to know the real ability of the husband to support his wife as required by law, would have the right to require the petitioner in this case to make a different statement from that which he had made in compliance with the law with reference thereto. Nothing held by this court when the case was here before would prevent the wife from adducing proof disputing the statements in the schedule as made. The real question now before us is whether aliunde evidence may be introduced to show a jury, upon the final trial of the case, that the husband is able to pay and ought to pay a larger amount of permanent alimony than he would, based upon his apparent financial condition as disclosed by the schedule filed by him in compliance with law. In other words, the question is whether the court, altogether aside from the schedule, can consider evidence of the financial condition of the husband, different from that indicated by the schedule.

We are of the opinion that the allegations of the cross-petition of the wife concerning the earnings of the husband and the property he has acquired subsequently to the separation are not immaterial and irrelevant in a suit for alimony. While we find no case hitherto decided by this court upon this precise point, it seems to us that justice to both parties would demand that the condition of the parties at the time of the hearing or trial of the application for alimony be considered by the court or jury, as the case might be, as of major importance in determining the question of whether alimony should be awarded, and, if so, the amount of award which would be proper under the circumstances. Any other rule would frequently work an injustice or unnecessary hardship. A husband might be possessed of a valuable estate and large earning capacity at the time of separation, whereas at the time of the hearing of the application for alimony the estate may be practically worthless and his earning capacity greatly diminished. In these circumstances it would be manifestly unfair, as well as contrary to the principles governing the allowance of alimony, to render an award of alimony in an amount based upon a prior condition which had ceased to exist. The opposite of the proposition may be easily imagined. We need look no further than the present record to find such an instance. According to the allegations of the petition the husband acquired some $80,000 worth of additional property between the date of separation and the date the application for alimony was filed, and his earnings substantially doubled during this period. According to the allegations of the cross-petition the husband separated from the wife without just cause. In the eyes of the law the defendant is the wife of the plaintiff until a final decree of absolute divorce is rendered, and, being blameless as alleged, she is entitled to alimony in an amount which is reasonable to maintain her in the condition she would have enjoyed had the husband not separated from her. As the marital ties still exist in contemplation of law as if no separation had occurred, it would seem to be proper that the wife should be allowed to plead and prove the financial condition of the husband at the time of the trial. It follows that the trial judge did not err in overruling the demurrer. In this connection see 1 R. C. L. 929, § 77; Toncray v. Toncray, 123 Tenn. 476 (131 S. W. 977, 34 L. R. A. (N. S.) 1106, Ann. Cas. 1912C, 284); 19 C. J. 253, 588.

While we have found no direct ruling of this court which controls the decision of the contention of the husband urged by special demurrer and designated as contention 2 above, the rule seems to be established in other jurisdictions that "Since alimony may be awarded by way of compensation to a wife, or given to her for the support to which she was entitled by the marriage and which she has been compelled to forego, the conduct of the husband is a proper subject of inquiry in reaching a determination as to the amount to be allowed, such as his cruelty. The greater the wrongs inflicted upon the wife by the husband, the more liberal should be the award." 19 C. J. 256, § 594, notes 45, 46, 47. It is our opinion that the ruling in our sister States just stated is so thoroughly in consonance with the principles of reason and justice that we are persuaded it is sound enough to be adopted by this court in the issue now before us.

The plaintiff excepts to the overruling of his demurrers addressed to paragraphs 22, 23, 24, 28, and 33 of the wife's cross-action, which allege acts of misconduct by the husband and intimacy with women in 1919 and 1920. He insists that these paragraphs of the cross-action should have been stricken upon demurrers based upon the ground that such allegations are immaterial and irrevelant, and that they set forth acts which, if done, are shown to have been condoned by the defendant, she after these dates having cohabited with the plaintiff, and at the time of the separation there was no repetition of the offense. We think the court properly overruled the demurrers, for the reason that condonation is a question of fact, and the allegations of the cross-action are not such as to imply condonation and only a conditional condonation dependent upon the penitence and reformation of the husband can be inferred from the language used in the cross-action. Furthermore, where the ground of divorce relied on is cruel treatment, the jury may grant either a partial or a total divorce; and since the defendant is praying that a divorce be denied the petitioner, the conduct of the husband might be very relevant and material in leading the jury to determine whether in this case a total divorce should be granted with or without the right accorded the plaintiff to marry again, or whether he should only be granted a partial divorce, in which event the right to remarry would be altogether precluded. Moreover, it may be said as to the demurrers to these

paragraphs, as well as the demurrers addressed to paragraphs 11, 12, 13, 14, 15, 16, 17, 18, and 19, that, the plaintiff charging that the defendant had persistently and continuously nagged and up-braided him for his liaisons with other women, the defendant would certainly be entitled by evidence to contradict the allegation that she nagged her husband by making any of the charges attributed to her, and equally as much is she entitled to show that the words and conduct charged to her and denominated as nagging were thoroughly justified by the facts relating to her husband's conduct.

In the eighth paragraph of the defendant's cross-action it is alleged: "This defendant shows that so long as she was strug-gling side by side with the plaintiff to gain together a foothold in the business world, plaintiff was kind and attentive and faithful to her; but when prosperity came, plaintiff forgot the faithful wife who had sacrificed her ease and comfort to help him climb the lad-der of success, turned his back to the woman who had stood by him in adversity, and went off after the society of dissolute women on whom he lavished the money which defendant had helped him to make and save, and this plaintiff did without the shadow of an excuse or justification." The plaintiff demurred to this paragraph, on the ground that it did not allege where, when, or with whom such conduct arose or was committed. This demurrer was prop-erly overruled by the court, because, though the charge in this particular paragraph is in general terms, it is quite plain that this paragraph is but a prelude or introduction of more specific state-ments of escapades with named women set forth in succeeding paragraphs.

The rulings in headnotes 5, 6, and 7 do not require elaboration.

*Judgment reversed. All the Justices concur, Atkinson and Gilbert, JJ., specially.*

ATKINSON, J. I concur in the result as to the rulings announced in the 1st, 2d, 4th, and 5th headnotes, but not in all of the reasoning contained in the corresponding divisions of the opinion. I dissent from each of the rulings as indicated in the remaining headnotes.

GILBERT, J. I dissent from the ruling in the 6th headnote, but concur in the rulings in the other headnotes.